# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO,
### WESTERN DIVISION

**TATE PROWS,**

             Plaintiff,

                v.

**CITY OF OXFORD,** (a political
subdivision of the State of Ohio)**,**
**LAURA BORSO,** (individual and official
capacity)**, DOUG ELLIOTT** (individual and
official capacity)**,**
**SAM PERRY** (individual and
official capacity)**.**

             Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Case No.** **1: 23 CV 330.**

**J. McFARLAND**

**Judge:**

**Magistrate Judge:** **M.J. LITKOVITZ**

## COMPLAINT AND BENCH TRIAL DEMAND ON ALL COUNTS APPLICABLE

Tate Prows ("Plaintiff" or "Prows") incorporates by reference the attached exhibits with the same force and effect as if herein set forth. Prows seeks redress for grievances against the Defendants for deprivation of rights under color of state law, conspiracy to interfere with civil rights, constitutional violations, trespass, civil conspiracy, intentional infliction of emotional stress, negligence, which incorporate civil penalties.

## INTRODUCTION

Prows brings this action under 42 USC §§ 1983 and 1985, to redress the deprivation under color of state law of rights secured by the United States Constitution, and conspiracy to interfere with civil rights. More specifically, this Complaint seeks to protect Prows' property rights.

This action arises out of Defendants' wanton and reckless disregard to Prows' inherent rights, secured to him by the United States and Ohio Constitution.

The actions taken by the City of Oxford, through its various Policymakers, have violated the provisions of their corporate Charter. The numerous violations of the Ohio Constitution, including Article 1 Sections 1,2,5,9,14,20, and Article 18 Section 2, by the City's Policymakers, are evidence of the abuse and misuse of their privilege. These various violations of the laws, providing for the City of Oxford's existence, should amount to a surrender of their corporate rights, privileges, and franchises, through an action in Quo Warranto, pursuant to Ohio Revised Code Chapter 2733.

This action arises out of Defendants' reckless indifference and deprivation of rights under color of state law, regarding the very basic and inherent rights of Prows, protected by the U.S. Constitution. The U.S. Constitutional violations being Amendments 4,5,6,7,8,9 and 14.

2

This action arises out of Defendants' conspiracy to deprive and interfere with the civil rights of Prows.

The causes of action brought are:

(1) 42 USC section 1983,

(2) 42 USC section 1985(3),

(3) Civil Conspiracy,

(4) Intentional infliction of emotional stress,

(5) Trespass, and

(6) Negligence.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to: (a) 28 USC § 1331 because this action arises under the Constitution and laws of the United States; (b) 28 USC § 1343 because this action seeks to redress the deprivation of Plaintiff's rights by Defendants acting under color of state law.

2. Venue is proper in this Court pursuant to 28 USC § 1391(b) because substantially all the events that give rise to the claims in this action occurred in Butler County, Ohio.

## THE PARTIES

3. Plaintiff Tate Prows (Prows) is a citizen and resident of Ohio. At all times material to this lawsuit, Tate Prows resided in Oxford, Ohio.

4. Defendant City of Oxford ("the city" hereafter) is a political subdivision of the State of Ohio. The city is a "person" for purposes of liability under section 1983.

5. Defendant Laura Borso is a citizen and resident of Ohio. She is sued in both her personal

and official capacity as a code enforcement officer of the City of Oxford, during the times relevant to this Complaint. Laura Borso is a "person" for the purposes of liability under section 1983. At all relevant times, Defendant Borso acted under color of state law. Defendant Borso is sued in her individual and official capacity.

6. Defendant Doug Elliott is a citizen and resident of Ohio. He is sued in both his personal and official capacity as the City of Oxford Manager. Doug Elliott is a "person" for purposes of liability under section 1983. At all relevant times, Defendant Elliott acted under color of state law. Defendant Elliott is sued in his individual and official capacity. Doug Elliott is considered a policymaker for purposes of municipality section 1983 liability.

7. Defendant Sam Perry is a citizen and resident of Ohio. He is sued in both his personal and official capacity as Community Development Director of the City of Oxford. Sam Perry is a "person" for purposes of liability under section 1983. At all relevant times, Defendant Perry acted under color of state law. Defendant Perry is sued in his individual and official capacity. Sam Perry is considered a policymaker for purposes of municipality section 1983 liability.

## PRELIMNARY STATEMENT

8. Prows alleges that Defendants, through negligence, ignorance, wanton disregard, or a combination of all three, recklessly, knowingly, and callously deprived Prows of his unalienable constitutional rights, while acting under color of state law, in the form of various codes and ordinances of the City of Oxford. These codes and ordinances were misapplied to Prows' property.

9. Prows alleges that his Fourth, Fifth, Sixth, Seventh, Eighth, Ninth and Fourteenth Amendment rights were violated by City Policymakers, and private actors working in

unison with the city. The City Policymakers and private actors conspired to deprive Prows

of his constitutional and property rights. In doing so, Prows' property was trespassed upon

multiple times, and his property was damaged and destroyed in the process.

10. Defendants knowingly and negligently traumatized Prows, through stalking, multiple

trespasses to his property, threatening notifications left on his door, threatening mailings,

and finally the wanton and reckless destruction of his property. Defendants violated clearly

established law that any reasonable official should know, and by doing so, acted outside the

scope of their authority. The actions taken by Defendants set forth a 6-month campaign in

which Policymakers were actively engaged in a pattern of willful violations of Prows'

rights, by way of harassment, trespass, property destruction, and fines, all done under color

of state law.

11. Prows will prove that the City of Oxford and its Policymakers do not know what their

responsibilities are and what they are permitted to do under the laws of Ohio. Defendants do

not know to whom their codes and ordinances apply, and they think their codes and

ordinances are laws, as though passed by Congress or the Ohio General Assembly, and

applicable to the people. This ignorance can be linked to their non-existent constitutional

training, or proper supervision, which inevitably leads to their callous indifference to the

inherent and inalienable rights of U.S. citizens (Ex. J).

12. This lack of training, or proper supervision, from the code enforcement officer to her direct

supervisor, all the way to the City Manager, can be shown to lead to the deliberate

indifference to the rights of people with whom code enforcement encounters. The

misapplication of city codes, due to the lack of any meaningful training or proper

supervision, created an environment in which the rights of Prows were violated.

13. Defendants have been improperly trained on both the U.S. and Ohio Constitution, as well as to whom their codes and ordinances apply. Policymakers Elliott and Perry have failed to properly supervise their subordinates. Elliott failed to supervise both Perry and Borso, and Perry failed to supervise Borso.

14. A claim for failure to supervise is actionable under § 1983 only if the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officer[]." *Horner v. Klein, 497 F. App'x 484, 489 (6th Cir. 2012) (quoting Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999)).*

15. The Sixth Circuit has made clear, "[o]nce an underlying constitutional violation is shown, the plaintiff 'must prove the municipality's policy or custom caused the alleged injury'; one such policy can be 'a policy of inadequate training or supervision.' " *Cutlip v. City of Toledo, 488 F. App'x 107, 112 (6th Cir. 2012)* (quoting Ellis ex rel. *Pendergrass v. Cleveland Mun. Sch. Dist., 455 F.3d 690, 700 (6th Cir. 2006)).* In such a scenario, "[t]he plaintiff must prove that: '(1) the . . . supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the [defendant's] deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury.' " Id. (quoting Ellis, 455 F.3d at 700).

16. The City of Oxford Policymakers routinely misapply their ordinances and codes to the public at large. A municipality is responsible under section 1983 when its "final policymakers" create a "policy or custom" which actually "inflicts the constitutional injury." *Monell v. New York City Dept. of Soc.Servies, 436 U.S. 658, at 694 (1978)*

*17.* The clear language of Monell states there are officials in a municipality "whose edicts may fairly represent official policy." *(Quoting Monell v. Department of Social Servs., 436 U.S. 658, 694 (1978).* "If a decision to adopt a particular course of action is made by an authorized municipal decisionmaker, that decision represents official government policy." (See Justice Brennan's plurality opinion in *Pembaur v. City of Cincinnati, quoting City of Newport v. Fact Concerts Inc, Owen v. City of Independence)*

18. A final policymaker may subject the municipality to liability: 1) if the policymaker consents to a custom or usage which causes a constitutional injury; or 2) if the policymaker approves a decision of a subordinate. Furthermore, "a final policymaker's ratification of an unconstitutional act will be chargeable to the municipality only if the plaintiff presents evidence that the final policymaker had approved the subordinate's decision and the basis for it." *City of St. Louis v. Praprotnik (citing Pembaur v. Cincinnati, 475 U.S. 469, 480 (1986).*

19. Elliott and Perry both consented and approved of the actions taken by code enforcement officers, and both policymakers were aware of Prows' objections to the actions taken against him and his property. When a constitutional injury is begun by a subordinate municipal officer but continued or finalized by a reviewing authorized final policymaker, there is a clear causal connection between the final policymaker's conduct and the constitutional injury.

20. Prows has attempted to settle his grievances out of the court system; however, City Policymakers were unwilling to do so. Plaintiff has no other choice than to seek redress in this Honorable Court.

# FACTS

21. On 7/23/21, Prows had his property trespassed upon for the first time, in violation of ORC 2911.21. City code enforcement left a threatening notice (Ex. A) stating that Prows was in violation of PMC 302.4, which prohibits weeds or plant growth in excess of 10 inches.

22. This notice was signed by an unknown code enforcement officer that is no longer employed by the municipality.

23. Prows had been growing his grass out, in a prairie style. This attracted local wildlife to his yard, such as eastern blue birds, honeybees, rabbits, and even foxes.

24. Prows did not mow his grass as often, which therefore used less gasoline, and was in essence better for the environment.

25. The City of Oxford has since passed an ordinance allowing for naturalized lawns, due in large part to Prows' actions, and a public outcry for the city to take on green initiatives.

26. Both the look of the yard and the increase in wildlife pleased Prows and his family greatly.

27. The City of Oxford has zero ownership, interest, or title to Prows' property. Prows, nor his property at the time, had any nexus with either the State of Ohio or the City of Oxford, and therefore the City's ordinances and codes did not apply to Prows or his property.

28. On 9/13/21, Prows' property was trespassed upon for the second time, by Borso. Another threatening notice was left on Prows' door (Ex. B) and Prows' "No Trespassing" signs were vandalized.

29. The fact that there were two separate notices left on Prows' door, by two separate code enforcement officers, the former of which no longer worked for the city, shows how this type of citation was and still is an official city policy, custom, and practice.

30. Perry and Elliott, both of whom are considered Policymakers, were made aware of the

actions of Borso, via Prows' written objections to the trespass upon his property.

31. On 9/14/21, Prows filed a criminal complaint with Oxford Police Department for the trespassing violations and ORC 2903.211 Menacing by stalking. (Ex. C)

32. On or around 9/24/21, certified mailing was received by Prows family (Ex. D), from Laura Borso. Borso admitted trespassing upon the property, threatened further property destruction, and threatened to falsify liens against Prows' property if compliance with PMC 302.4 was not satisfied.

33. On 9/28/21, Prows sent an email to Borso asking for a meeting to discuss the property issues. This offer was declined. Borso, with full knowledge and approval of Perry, threatened further trespass in a corresponding email. (Ex. E)

34. On 10/4/21, Borso, Elliott, and Perry received affidavits, via certified mail, from property title holder, Ann Prows. (Ex. F)

35. The affidavit sent by Ann Prows, composed by Plaintiff, articulated that these color of law actions, and crimes being perpetrated by City Policymakers, were unwarranted, and further trespass would be met with legal actions against Defendants.

36. On 10/13/21, Prows emailed Borso, Elliott, and Perry, asking for the legal authority they were relying on to trespass upon non-commercial private property that does not belong to the city. This email asked for records which show how their municipal codes and ordinances are somehow binding on the public (Ex. G). No response was received.

37. On 10/18/21, a lawn care company, working in collaboration with the City of Oxford, trespassed upon and destroyed Prows' property, which included several sycamore tree saplings that held significant sentimental value to Prows.

38. Prows returned home from work that day to see the destruction of his property. Prows

9

became physically and emotionally ill at seeing what had been done to the land that he worked so hard on.

39. On 11/3/21, Notice and "bill" were received by the Prows family via certified mail (Ex. H)

40. The "bill" totaled $570.70 which included an administrative fine of $150.00 for the alleged removal of a placard that was supposedly left on Prows' property.

41. The notice was sent and signed by Sam Perry. This notice threatened the filing of fraudulent liens upon the property if the extortion "bill" was not paid.

42. On or around 11/16/21, Prows filed a mail fraud complaint with the USPS.

43. On or around 12/3/21, criminal complaints were received, via certified mail, by District Attorney Patel, Attorney General Yost, and Butler County Sheriff Jones (Ex. I).

44. This criminal complaint detailed the illegal actions taken by the city, Elliott, Borso, and Perry.

45. The state crimes alleged are violations of ORC 2903.211(A)(1)(B)(2)(c), a felony, ORC 2921.45, ORC 2913.02(A)(1)(3)(4)(5), ORC 2923.32(A)(2), ORC 2923.01(A)(1)(2), the acts in furtherance of being ORC 2906.06(A)(1) and ORC 2909.07(A)(1)(a), and ORC 2923.32. These crimes by Defendants are also violative of ORC 3.07.

46. The federal crimes alleged are violations of 18 USC sections 241, 242, 1341, and 876(d).

47. On 1/14/22, Prows met with Perry to discuss the events that had taken place. During the discussion, Prows asked Perry if it was his contention that the city controlled the grass height of every yard within the City's territorial jurisdiction, to which Perry responded "yes."

48. City of Oxford Policymakers routinely misapply their ordinances and codes, likely due to their lack of training or supervision on to whom their ordinances and codes apply, their

authority under the laws of Ohio Municipal Home Rule, and the U.S. and Ohio
Constitution.

49. With subsequent public records requests to the city, Prows discovered that the City of
Oxford, Oxford Code Enforcement, and Oxford Police Department, have never been trained
or supervised on subject matter pertaining to either the U.S. Constitution or the Ohio
Constitution.

50. This woeful lack of training or supervision on either the U.S. or Ohio Constitution gives
reason why City Policymakers, such as Defendants, engage in such unlawful and criminal
behavior. These violations of rights are the inevitable result of this lack of training and
supervision.

51. In the *Pembaur v. City of Cincinnati* plurality opinion, Justice Brennan said "a policy is a
deliberate choice to follow a course of action among…various alternatives by the official or
officials responsible for establishing final policy with respect to the subject matter in
question."

52. Defendants acted far outside the scope of their authority and in so doing violated the
provisions set forth in their Charter.

53. City Policymakers violated clearly established law that any reasonable official should
know.

## CITY OF OXFORD CHARTER, ORDINANCES & CODES

54. The City of Oxford is a chartered municipal corporation, its powers being granted and
limited by the Ohio Constitution.

   **http://codelibrary.amlegal.com/codes/oxford/latest/oxford_oh/0-0-0-22274**

55. The City Manager is the Chief Executive and Administrative Officer of the municipality.

The City Manager shall be responsible to the Council for the proper administration of all affairs of the municipality.

56. The City Manager's duties can be found in Section 4.02, one of those duties being to see that this Charter and the ordinances and resolutions of the city are faithfully observed and enforced.

57. Article V of the Charter discusses Administrative Departments and their creation. Sam Perry is the Community Development Director and the department head of code enforcement.

58. Elliott and Perry are municipal policymakers, and both were included in Prows' communications regarding his objections to the criminal acts of Borso.

59. The City of Oxford defines "Person" in Section 101.02(k) of their ordinances. "Person includes an individual, corporation, business trust, estate, trust, partnership and association."

60. *Noscitur a sociss* is a rule of statutory construction defining the meaning of an unclear or ambiguous word should be determined by considering the words with which it is associated in the statute.

61. SCOTUS has said "Words that can have more than one meaning are given content...by their surroundings." *Whitman v. Am. Trucking Ass'n 531 U.S. 457,466, 121 S.Ct. 903, 149 L.E.2d (2001)*. Another example coming from *HFDF Inc. v. Biden*, which held "And although "sanitation" is susceptible of multiple and wide ranging meanings, it is given more precise content by the neighboring words with which it is associated." *United States v. Williams, 533 U.S. 285,294,128 S. Ct. 1830, 170 L.Ed.2d 650(2008)*.

62. The word "individual," within the definition of "Person," can therefore never be construed

as meaning a non-corporate human being, considering the enumeration of creatures of statute, i.e., creations of the state, following it within the definition. This can be further evidenced by what the powers of local self-government have been defined as by the Ohio Supreme Court, which will be discussed later.

63. In Section 101.07, *Determination of Legislative Intent*, (a)(1) "Compliance with the constitution of the State and United States is intended" and (a)(3) "A just and reasonable result is intended."

64. Section 503.02 *Classification of Civil Offenses*, all classifications of civil offenses state "A *person* who violates a standard of conduct…" This evidences that only Persons, Inhabitants, Members of the Corporation, are subject to these codes and ordinances and the penalties thereof.

65. Section 935.20 Notice *to Cut, Destroy or Remove* section (a) begins "All properties **within the City of Oxford**…This phrase cannot refer to property that has no Nexus or Situs with the State of Ohio, and or the City of Oxford.

66. The City of Oxford is nothing more than a stack of papers, a legal fiction. The phrase "within the City of Oxford" refers only to areas to which the city legally controls.

67. Section 935.99 *Penalty*, states "Whoever violates any provision of this section is guilty of a minor misdemeanor for the first offense and a misdemeanor of the fourth degree for any subsequent offense…"

68. The above penalty is clearly not applicable to We the People as it completely violates Due Process.

69. The City of Oxford's Codes and Ordinances are administrative in nature, and meant for fellow creatures of statute, not We the People.

70. Even if PMC 302.4 were applicable to Prows, which it is not, Prows was never given proper procedural due process by the City of Oxford and was never given the option of a trial by jury, even though Prows was fined $150.00 for the supposed removal of a placard that was allegedly placed in Prows' yard by code enforcement.

71. The City of Oxford Property Maintenance Code, Section 302.4 *Maintenance and removal of weeds*, was misapplied by City Policymakers and code enforcement.

72. PMC 302.4 was the code used to trespass upon Prows' property, destroy his property, and violate his constitutional rights.

73. PMC 302.4 sections (1) and (2) uses the same language referenced above, such as "within the City of Oxford," and "within the corporate limits of the City."

74. Two key definitions in Oxford's PMC can be found in Section 202.

75. Owner. "Any person, agent, operator, firm or corporation having a legal or equitable interest in the property."

76. Person. "An individual, corporation, partnership or any other group acting as a unit."

77. The definitions in the above paragraphs #75 and #76, when using *noscitur a sociis* and the previously cited SCOTUS rulings, can be shown to only apply to creatures of statute, and therefore not Prows.

78. The City of Oxford has since passed an ordinance to eliminate certain sections of their Property Maintenance Code, due to redundancy.

79. Prows includes these eliminated sections as Exhibit K.

80. The misapplication of the City's ordinances and codes directly led to the deprivation of Prows' constitutional rights.

81. The violation of Prows' constitutional rights can be directly linked to the non-existent

constitutional training or supervision of City Policymakers and code enforcement officers.

82. City Policymakers, by and through various city departments, as policy, practice and custom, misapply their codes and ordinances to the sovereign men and women of the United States and Ohio.

83. The misapplication of the city's ordinances and codes leads to frequent constitutional rights violations. Prows has experienced these violations firsthand and can evidence numerous other examples of the City of Oxford egregiously misapplying their codes and ordinances upon non-Persons.

## OHIO MUNICIPAL HOME RULE POWERS

84. In Ohio, municipal corporations have certain powers granted to them in Article XVIII of the Ohio Constitution that exist outside the authority found in the Revised Code.

85. Section 3 of Article XVIII states, "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary, and other similar regulations, as are not in conflict with general laws."

86. This section grants municipal corporations two types of authority: the power of local self-government and the power to adopt and enforce local police, sanitary, and other similar regulations that are not in conflict with general laws. The section's limiting language "as are not in conflict with general laws" applies only to the passage of police, sanitary, and other similar regulations and does not apply to the powers of local self-government.

87. The exact scope of "all powers of local self-government" has not been defined by the courts, but cases have established standards for determining what the term includes. A basic standard applied by the *Ohio Supreme Court* is to determine if an issue has impact outside the territory of the municipal corporation.

15

88. Prows' property is outside the territory of the City of Oxford's control. It may lie within the city's territorial jurisdiction, but territorial jurisdiction alone does not grant the city any ownership, interest, or title to Prows' property.

89. In 1958, in Beachwood v. Bd. Of Elections of Cuyahoga County, the Court described the limits of the power of local self-government as follows: "The power of local self-government granted to municipalities by Article XVIII relates **solely to the government and administration of the internal affairs of the municipality**, and in the absence of a statute conferring broader power, municipal legislation must be confined to that area… [citation omitted.] Where a proceeding is such that it affects not only the municipality itself but the surrounding territory beyond its boundaries (e.g., Prows' property), such proceeding is no longer one which falls within the sphere of local self-government but is one which must be governed by the general laws of the state." *Beachwood v Bd. Of Elections of Cuyahoga County, 167 Ohio St. 369, 371 (1958).*

90. Once again, although the courts have not specifically defined the limits of "local self-government," they have found the following to be matters of local self-government: Internal organization; The control use, and ownership of certain public property; Salaries and benefits of municipal officers and employees; Recall of municipal elected officials; Regulation of municipal streets; Procedures for the sale of municipal property; Regulation of city civil service.

91. A municipal corporation only has legal control over very specific actions.

92. When a municipality and its Policymakers begin directly violating the constitutional rights of, We the People, they have acted outside the scope of their legal authority.

93. Municipal codes and ordinance are corporate by-laws meant for fellow creatures of statute.

94. Municipal corporations have no law making authority. That power resides in the U.S. Congress and the Ohio General Assembly.

95. " A Municipal corporation is a body politic created by organizing the INHABITANTS of a prescribed area, under the authority of the legislature, into a corporation with all the usual attributes of a corporate entity but endowed with a public character by virtue of having been invested by the legislature with subordinate legislative powers to administer local and internal affairs of the community." *Coyle v Gray, 7 Houst (Del) 44, 30 A 728; State ex rel. White v Barker, 116 Iowa 96, 89 NW 204; Marshall v Kansas City (Mo) 355 SW2d 877, 93 ALR2d 1012.*

96. "A municipal corporation is a legal institution, formed by charter from sovereign power, erecting a populous community of a prescribed area into a body politic and corporate, with corporate name and continuous succession, and for the purpose and with the authority of subordinate self-government and improvement and local administration of affairs of state." *Ancrum v Camden Water, Light & Ice Co. 82 SC 284, 64 SE 151.*

97. "A municipal corporation must have both territory and INHABITANTS; the corporation consists of both territory and INHABITANTS; both are indispensable to its existence. 13 The INHABITANTS of the territory included within a political organization are THE MEMBERS OF THE CORPORATION. 14 they, rather than the common council or governing body, are said to compose the corporation. 15" 13. *Coyle v Gray, 7 Houst (Del) 44, 30 A 728; People ex rel. Quisenberry v Ellis, 253 III 369, 97 NE 697; State ex rel. White v Barker, 116 Iowa 96, 89 NW 204; Hannibal v Winchester (Mo) 391 SW2d 279; International R. Co v Rann, 224 NY 83, 120 NE 153. 14. Mt. Pleasant v Beckwith, 100 US 514, 25 L Ed 699; Watertown v Cowen, 4 Paige (NY) 510. 15. Werlein v New*

*Orleans, 177 US 390, 44 L Ed 817, 20 S Ct 682.*

98. "Municipal corporations, on the other hand, are more amply endowed with corporate life

and functions. They exist under general or special charters conferred at the direct

solicitation or by the free consent of the people who compose them and are created chiefly

for the interest, advantage, and convenience of their INHABITANTS." *Kahn v Sutro, 114*

*Cal 316, 46 P 87; Jackson County v Kaul, 77 Kan 717, 96 P 45; Downing v*

*Mason County, 87 Ky 208, 8 SW 264; Jefferson County v Grafton, 74 Miss 435, 21 So 247;*

*Hersey v Neilson, 47 Mont 132, 131 P 30; Hoyt v Paysee, 51 Nev 114, 269 P 607, 60 ALR*

*819; White v Chowan County, 90 NC 437; Burnett v Maloney, 97 Tenn 697, 37 SW 689.*

99. These are but a few examples of a multitude that clearly demonstrate that Municipalities

operate solely for the purpose of administering powers of local self-government and are in

no way supposed to be violating the rights of the people.

100.      When one reads the City of Oxford's codes and ordinances,

https://codelibrary.amlegal.com/codes/oxford/latest/oxford_oh/0-0-0-8,  it quickly becomes

apparent they are meant for **INHABITANTS,** or **MEMBERS OF THE CORPORATION,**

**or PERSONS,** all of which Prows is not.

## STATE CAUSES OF ACTION

## COUNT I
## TRESPASS

101.      Prows realleges, restates, and incorporates by reference the allegations in the

foregoing jurisdictional and factual allegations.

18

102.     Defendant Borso, with the knowledge and approval of Policymakers Elliott and

Perry, unlawfully and without permission or warrant, trespassed upon Prows' property,

multiple times, to force compliance with PMC 302.4.

103.     Defendants hired a lawn care company to unlawfully trespass upon and destroy

Prows' property, to force compliance with PMC 302.4.

104.     Prows will not be including this lawn care company, or its workers, as Defendants.

Prows does not want to cause stress or undue hardship to a hardworking American that was

put in a bad position by incompetent City Policymakers.

*105.*     Municipal policy can be defined as "a deliberate decision to follow one of many

alternative courses of action made by the official responsible for establishing final policy

with respect to the subject matter in question." *Pembaur v. City of Cincinnati 475 U.S. at*

*483-84*

106.     Actions taken by City Defendants violated clearly established law that any

reasonable official should know.

107.     This action violated ORC 2305.09(A)(D).

108.     This invasion and unlawful entry upon Prows' property was done with intent to

force compliance with City of Oxford's Property Maintenance Code 302.4.

109.     Prows previously attempted, upon multiple occasions, to plead with Defendants that

they had no title, ownership, or interest in Prows' property and that their codes and

ordinances were being misapplied.

110.     Defendants forced entry upon Prows' property and permanently destroyed said

property, including multiple sycamore tree saplings that held significant sentimental value

to Prows.

111.    As a direct and proximate result of Defendants' color of law actions in which they

acted outside the scope of their authority, Prows suffered and continues to suffer damages,

including the loss of his property and the mental and emotional distress that this violation of

his sacred, inalienable rights caused.

WHEREFORE, Prows demands judgment for the trespass and destruction of his

property, against the Defendants jointly and severally for the actual, general, special, and

compensatory damages in the amount of $25,000.00 per Defendant, and further demands

judgment against Defendants for the punitive damages in an amount to be determined by the

Judge, plus cost of this action, including attorney's fees, and such other relief deemed to be

just, fair, and appropriate.

## COUNT II
## CIVIL CONSPIRACY

112.    Prows realleges, restates, and incorporates by reference the allegations in the

foregoing jurisdictional and factual allegations.

113.    All named Defendants, with wanton and reckless disregard for the rights of Prows,

knowingly misapplied the City of Oxford's PMC to land they had zero ownership, title, or

interest in.

114.    Prows attempted, on multiple occasions, to bring this to the Defendants' attention

and went so far as to file a police report with Oxford Police Department. Defendants

ignored Prows' pleas and continued to follow their practices, policies and customs,

culminating in the violation of Prows' rights.

115.    City of Oxford Policymakers entered into an agreement with a lawn care company,

which then trespassed upon and destroyed Prows' property.

116.    Defendants hired a lawn care company who then destroyed multiple sycamore tree saplings that held significant sentimental value to Prows.

117.    Prows, upon arriving home from work to see the destruction of his property, was deeply distraught and experienced severe emotional trauma because of this blatant violation of his civil rights.

118.    These unlawful actions violated several state and federal criminal codes.

119.    The unlawful actions taken by City of Oxford Policymakers violated clearly established law that any reasonable official should know.

120.    These unlawful actions were far outside the scope of the authority of the City Policymakers and can be directly attributed to their woeful lack of constitutional training or proper supervision.

121.    This lack of training and supervision, regarding to whom their ordinances and codes apply, led to the deliberate indifference to Prows' constitutional rights, which is the inevitable result of the City's lack of proper training or supervision.

*122.*    Municipalities are liable for constitutional violations by demonstrating deliberate indifference on the part of the municipality to recurring constitutional violations committed by non-policymaking employees (*Pena v. Leombruni, 200 F.3d 1031, 1033, 1034 (7ᵗʰ Cir.1999),* or deliberate indifference to a very strong likelihood that constitutional rights will be violated as a result of failing to train, supervise or discipline in certain areas where the need for such training is obvious (*Allen v. Muskogee, 119 F.3d 837, 843, 844 (10th Cir. 1997).* Liability in such cases is based on the Supreme Court's decisions in *City of Canton v. Harris, 489 U.S. 378 (1989).*

*123.*    The standard for proving a civil conspiracy was set forth by the Sixth Circuit in

21

*Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985), "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all the details of the illegal plan or all or the participants involved. All that must be shown is that there was a single plan, that the alleged co-conspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant."

124.     As a direct and proximate result of Defendants' color of law actions in which they acted outside the scope of their authority, Prows suffered and continues to suffer damages, including the loss of his property and the mental and emotional distress that this violation of his sacred, inalienable rights caused.

WHEREFORE, Prows demands judgment for the civil conspiracy which culminated in the trespass and destruction of his property, against the Defendants jointly and severally for the actual, general, special, and compensatory damages in the amount of $25,000.00 per Defendant, and further demands judgment against Defendants for the punitive damages in an amount to be determined by the Judge, plus cost of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

## COUNT III
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

125.     Prows realleges, restates, and incorporates by reference the allegations in the foregoing jurisdictional and factual allegations.

126.     All Defendants, either through callous disregard, reckless intent, or ignorance, engaged in a pattern of outrageously corrupt activity, and knowingly violated the sacred

22

inalienable rights of Prows, and the constitutions they swore to uphold.

127.     City Policymakers violated Prows' basic constitutional rights. These violations by
City Policymakers were clearly established law that any reasonable official should have
known.

128.     The City Policymakers desecrated both the U.S. and Ohio Constitution, thus
violating, multiple times over, the Charter of their very existence.

129.     These extreme and outrageous acts, all done under color of state law and outside the
scope of their lawful authority, were of such reckless character, in complete disregard for
Prows' God given rights, that Prows suffered and continues to suffer severe emotional
distress.

130.     As a direct and proximate result of Defendants' color of law actions in which they
acted outside the scope of their authority, Prows suffered and continues to suffer damages,
including the loss of his property and the mental and emotional distress that this violation of
his sacred, inalienable rights caused.

WHEREFORE, Prows demands judgment for the intentional infliction of
emotional distress that he suffered, against the Defendants jointly and severally for the
actual, general, special, and compensatory damages in the amount of $25,000.00 per
Defendant, and further demands judgment against Defendants for the punitive damages in
an amount to be determined by the Judge, plus cost of this action, including attorney's
fees, and such other relief deemed to be just, fair, and appropriate.

## COUNT IV
## NEGLIGENCE

131.     Prows realleges, restates, and incorporates by reference the allegations in the

foregoing jurisdictional and factual allegations.

132.     City Policymakers have duties and obligations to uphold. They are given authority to operate the governmental functions of the City of Oxford, and are there to protect the rights of those living within their territorial jurisdiction.

133.     Instead of protecting the rights of Prows, City Policymakers breached their duty and acted outside the scope of their authority, violating numerous of Prows' constitutional rights in the process.

134.     The lack of training that City Policymakers receive can be directly attributed to their ultra vires actions, in which they violated Prows' rights.

135.     City Policymakers' inability to stay within the scope of their authority directly led to Prows' constitutional rights being violated, and his property being trespassed upon and destroyed.

136.     City Policymaker Defendants knew or should have known that they were acting outside the scope of their authority and violating clearly established law that any reasonable official should know. Prows attempted, upon numerous occasions, to get Defendants to discontinue their violation of his rights. Defendants did not listen, and instead carried out their practice, policies, and customs, the result of which being Prows' constitutional rights were violated and his property was trespassed upon and destroyed.

137.     As a direct and proximate result of Defendants' color of law actions in which they acted outside the scope of their authority, Prows suffered and continues to suffer damages, including the loss of his property and the mental and emotional distress that this violation of his sacred, inalienable rights caused.

          WHEREFORE, Prows demands judgment from Defendants for their negligent

actions that directly led to the damages that he suffered, jointly and severally for the actual, general, special, and compensatory damages in the amount of $25,000.00 per Defendant, and further demands judgment against Defendants for the punitive damages in an amount to be determined by the Judge, plus cost of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

## FEDERAL CAUSES OF ACTION

### COUNT I
### Violation of the Fourth Amendment-42 USC § 1983

138.     Prows realleges, restates, and incorporates by reference the allegations in the foregoing jurisdictional and factual allegations.

139.     The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment to the United States Constitution and enforceable pursuant to 42 USC § 1983, provides that states may not violate the rights of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

140.     All named Defendants were directly involved with the violation of Prows' Fourth Amendment right, in various ways.

141.     City Policymakers Elliott and Perry were in communication with Borso, and knew that she was enforcing PMC 302.4 upon Prows' property.

142.     Borso trespassed on Prows' property multiple times to enforce PMC 302.4.

143.    PMC 302.4 was misapplied to Prows and his property. All City Defendants were aware of this, as Prows attempted to communicate with them that they were acting outside the scope of their authority in attempting to misapply PMC 302.4.

144.    City Policymakers hired a lawn care company to trespass upon and destroy Prows' property on 10/18/21.

*145.    A seizure of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." Soldal v. Cook County, U.S. 113 S.Ct. 538, 543, 121 L.E.2d 450 (1992) (quoting United States v. Jacobsen, 466 U.S. 109, 113, 104, S.Ct. 1652, 1656, 80 L.E.2d85 (1984))*

146.    Where damage to the property or premises is an issue, the damage is treated as a "seizure of property" under the Fourth Amendment.

*147.    "When a defendant is a private entity, the 6th Circuit recognizes three tests for determining whether the conduct is fairly attributable to the state: the public function test, the state compulsion test, and the nexus test." Wolotsky v. Hohn, 960 F.2d 1331 (6th Cir. 1992)*

*148.    Applications of these tests to the conduct of a private entity, however, is relevant only in cases in which there are no allegations of cooperation or concerted action between state and private actors. Cooper v. Parrish, 203 F.3d 937, 952 n.2 (6th Cir.2000) ("If a private party has conspired with state officials to violate constitutional rights, then that party qualifies as a state actor and may be held liable pursuant to § 1983...") Moore v. City of Paducah, 890 F.2d 831, 834 (6th Cir.1989).*

*149.    Private persons may be held liable under § 1983 if they willfully participate in joint action with state agents. Dennis v. Sparks, 449 U.S. 24, 27-28 (1980).*

150.    City Defendants acted outside the scope of their authority and misapplied PMC 302.4 on Prows' property.

151.    The ultra vires misapplication then led to City Defendants hiring a lawn care company.

152.    This lawn care company, with full knowledge, approval, and payment from the City of Oxford and its Policymakers, trespassed upon and destroyed Prows' property.

153.    These ultra vires actions were all done without a proper warrant and in violation of the Fourth Amendment.

154.    All City of Oxford Defendants violated clearly established law that any reasonable official should know.

155.    Municipalities are liable for constitutional violations by demonstrating deliberate indifference on the part of the municipality to recurring constitutional violations committed by non-policymaking employees (*Pena v. Leombruni, 200 F.3d 1031, 1033, 1034 (7th Cir.1999)*, or deliberate indifference to a very strong likelihood that constitutional rights will be violated as a result of failing to train, supervise or discipline in certain areas where the need for such training is obvious (*Allen v. Muskogee, 119 F.3d 837, 843, 844 (10th Cir. 1997)*. Liability in such cases is based on the Supreme Court's decisions in *City of Canton v. Harris, 489 U.S. 378 (1989)*.

156.    As a direct and proximate result of Defendants' color of law actions in which they acted outside the scope of their authority, Prows suffered and continues to suffer damages, including the loss of his property and the mental and emotional distress that this violation of his sacred, inalienable rights caused.

WHEREFORE, Prows demands judgment for the violation of his Fourth

27

Amendment right, against the Defendants jointly and severally for the actual, general, special, and compensatory damages in the amount of $50,000.000 per Defendant, and further demands judgment against the Defendants for punitive damages in an amount to be determined by the Judge, plus cost of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

## COUNT II
## Violation of the Fifth Amendment -42 USC § 1983

157.    Prows realleges, restates, and incorporates by reference the allegations in the foregoing jurisdictional and factual allegations.

158.    The Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment to the United States Constitution and enforceable pursuant to 42 USC § 1983, provides that states may not abridge the people's life, liberty, or property, without due process of law.

159.    City Defendants, in acting outside the scope of their authority and misapplying city codes on Prows and his property, did not give Prows proper due process under the law.

160.    PMC 302.4 is an Administrative Code meant for creatures of statute, i.e., Persons, Inhabitants, or Members of the Corporation.

161.    Due process requires that the procedures by which laws are applied must be evenhanded, so that individuals are not subjected to the arbitrary exercise of government power.

162.    In civil cases a balancing test is used that evaluates the government's chosen procedure with respect to the private interest affected, the risk of erroneous deprivation of that interest under the chosen procedure, and the government interest at stake.

*163.*    The Court has explained that "[p]rocedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus, 435 U.S. 247, 259 (1978)* "[P]rocedural due process rules are shaped by the risk of error inherent in the truth-finding process as applied to the generality of cases." *Matthews, 424 U.S. at 344.*

164.    When City Policymakers deprived Prows of his constitutional and property rights because they deemed his grass too high, that can never be a significant government interest at stake in comparison to the rights being violated.

165.    PMC 302.4 was misapplied by City Policymakers. Defendants acted far outside the scope of their authority and enforced a code made for Inhabitants/Persons/Members of the Corporation, upon Prows, one of the sovereign people of Ohio and the United States.

166.    City Defendants do not know to whom their ordinances and codes apply, due to their woeful lack of training or proper supervision.

167.    Prows' substantive due process rights, protected by the Fifth Amendment to the U.S. Constitution, were violated by City Defendants' ultra vires actions and their misapplication of the City's codes.

*168.*    Municipalities are liable for constitutional violations by demonstrating deliberate indifference on the part of the municipality to recurring constitutional violations committed by non-policymaking employees (*Pena v. Leombruni, 200 F.3d 1031, 1033, 1034 (7ᵗʰ Cir.1999),* or deliberate indifference to a very strong likelihood that constitutional rights will be violated as a result of failing to train, supervise or discipline in certain areas where the need for such training is obvious (*Allen v. Muskogee, 119 F.3d 837, 843, 844 (10th Cir. 1997).* Liability in such cases is based on the Supreme Court's decisions in *City of Canton*

*v. Harris*, 489 U.S. 378 (1989).

169.     As a direct and proximate result of Defendants' color of law actions in which they

acted outside the scope of their authority, Prows suffered and continues to suffer damages,

including the loss of his property and the mental and emotional distress that this violation of

his sacred, inalienable rights caused.

WHEREFORE, Prows demands judgment for the violation of his Fifth Amendment

right, against the City Policymaker Defendants Perry and Elliott, jointly and severally for

the actual, general, special, and compensatory damages in the amount of $50,000.000 per

Defendant, and further demands judgment against Perry and Elliott for punitive damages

in an amount to be determined by the Judge, plus cost of this action, including attorney's

fees, and such other relief deemed to be just, fair, and appropriate.

## COUNT III
## Violation of the Sixth Amendment –42 USC § 1983

170.     Prows realleges, restates, and incorporates by reference the allegations in the

foregoing jurisdictional and factual allegations.

171.     The Sixth Amendment to the United States Constitution, made applicable to the

states through the Fourteenth Amendment to the United States Constitution and enforceable

pursuant to 42 USC § 1983, provides that the states must, in all criminal proceedings, the

accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State

and district wherein the crime shall have been committed.

172.     Prows was cited with violation of PMC 302.4, which is considered a minor

misdemeanor in the State of Ohio.

173.     In the State of Ohio, a minor misdemeanor is the least serious type of criminal

30

offense, but a criminal offense nonetheless.

174.    Prows was denied any of the provisions protected by his Sixth Amendment right.

175.    As a direct and proximate result of City Policymaker Defendants' color of law actions in which they acted outside the scope of their authority, Prows suffered and continues to suffer damages, including the loss of his property and the mental and emotional distress that this violation of his sacred, inalienable rights caused.

WHEREFORE, Prows demands judgment for the violation of his Sixth Amendment right, against the City Policymaker Defendants Elliott and Perry, jointly and severally for the actual, general, special, and compensatory damages in the amount of $50,000.000 per Defendant, and further demands judgment against Elliott and Perry for punitive damages in an amount to be determined by the Judge, plus cost of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

## COUNT IV
### Violation of the Seventh Amendment -42 USC § 1983

176.    Prows realleges, restates, and incorporates by reference the allegations in the foregoing jurisdictional and factual allegations.

177.    The Seventh Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment to the United States Constitution and enforceable pursuant to 42 USC § 1983, provides that the states must, in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved.

178.    Prows was summarily fined $150.00 by the city for the supposed removal of a placard that the city allegedly placed in Prows' yard.

179.    This is a civil administrative fine of more than $20.00.

180.    Prows was never offered a trial by jury nor a hearing before an impartial tribunal.

181.    City Policymaker Defendants summarily fined Prows $150.00 without the option of a trial by jury, which violates Prows' Seventh Amendment right.

182.    City of Oxford Policymakers ultra vires actions violated clearly established law that any reasonable official should have known.

183.    As a direct and proximate result of City Policymaker Defendants' color of law actions in which they acted outside the scope of their authority, Prows suffered and continues to suffer damages, including the loss of his property and the mental and emotional distress that this violation of his sacred, inalienable rights caused.

WHEREFORE, Prows demands judgment for the violation of his Seventh Amendment right, against the City Policymaker Defendants Perry and Elliott, jointly and severally for the actual, general, special, and compensatory damages in the amount of $50,000.000 per Defendant, and further demands judgment against Elliott and Perry for punitive damages in an amount to be determined by the Judge, plus cost of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

## COUNT V
## Violation of the Eighth Amendment-42 USC § 1983

184.    Prows realleges, restates, and incorporates by reference the allegations in the foregoing jurisdictional and factual allegations.

185.    The Eighth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment to the United States Constitution and enforceable pursuant to 42 USC § 1983, provides that states may not impose excessive fines.

186.     Prows was summarily fined $150.00 for the alleged removal of a placard from his
own yard, supposedly placed there by the city.

187.     There was zero evidence provided by the city for this supposed infraction and Prows
was denied proper substantive and procedural due process of law.

188.     City Policymakers acted outside the scope of their authority and misapplied a city
code on property that they had no right, interest, ownership, or title to.

189.     The misapplication of city codes led to the trespass and destruction of Prows'
property as well as fines that were excessive, considering that they should never have been
issued in the first place.

190.     The violations of Prows' most basic constitutional rights are most certainly clearly
established law that any reasonable official should have known.

191.     As a direct and proximate result of City Policymaker Defendants' color of law
actions in which they acted outside the scope of their authority, Prows suffered and
continues to suffer damages, including the loss of his property and the mental and
emotional distress that this violation of his sacred, inalienable rights caused.

WHEREFORE, Prows demands judgment for the violation of his Eighth Amendment
right, against the City Policymaker Defendants Elliott and Perry, jointly and severally for
the actual, general, special, and compensatory damages in the amount of $50,000.000 per
Defendant, and further demands judgment against Elliott and Perry for punitive damages
in an amount to be determined by the Judge, plus cost of this action, including attorney's
fees, and such other relief deemed to be just, fair, and appropriate.

**COUNT VI**
**Violation of the Ninth Amendment –42 USC § 1983**

192.      Prows realleges, restates, and incorporates by reference the allegations in the

foregoing jurisdictional and factual allegations.

193.      The Ninth Amendment to the United States Constitution, made applicable to the

states through the Fourteenth Amendment to the United States Constitution and enforceable

pursuant to 42 USC § 1983, provides that the enumeration in the Constitution, of certain

rights, shall not be construed to deny or disparage others retained by the people.

194.      Ohio Article 1 Section 1 enumerates one of these rights retained by the people,

being the right of the people to acquire, possess, and protect property.

195.      The right of property is perhaps the most foundational right discussed by the framers

of our great republic.

196.      All named Defendants played a significant role in depriving Prows of his property

rights through their ultra vires actions and misapplication of city codes.

197.      As a direct and proximate result of City Policymaker Defendants' color of law

actions in which they acted outside the scope of their authority, Prows suffered and

continues to suffer damages, including the loss of his property and the mental and

emotional distress that this violation of his sacred, inalienable rights caused.

WHEREFORE, Prows demands judgment for the violation of his Ninth Amendment

right, against the Defendants jointly and severally for the actual, general, special, and

compensatory damages in the amount of $50,000.000 per Defendant, and further demands

judgment against the Defendants for punitive damages in an amount to be determined by

the Judge, plus cost of this action, including attorney's fees, and such other relief deemed

to be just, fair, and appropriate.

## COUNT VII
## Violation of the Fourteenth Amendment - 42 USC § 1983

198.     Prows realleges, restates, and incorporates by reference the allegations in the

foregoing jurisdictional and factual allegations.

199.     The Fourteenth Amendment to the United States Constitution, enforceable pursuant

to 42 USC § 1983, provides that no state shall make or enforce any law which shall abridge

the privileges or immunities of citizens of the United States; nor shall any State deprive any

person of life, liberty, or property, without due process of law; nor deny any person the

equal protection of the laws.

200.     Shockingly, the City of Oxford Defendants managed to violate all three provisions

of the Fourteenth Amendment, through their ultra vires, color of law actions.

201.     The equal protections provision was violated in that property owners similarly or

exactly situated to Prows, living just down the road in Oxford Township, enjoyed all of

their rights, privileges, and immunities guaranteed them by the U.S. Constitution, whereas

Prows had his property rights infringed upon by City of Oxford Policymakers acting outside

the scope of their authority.

202.     The privileges or immunities of citizens of the United States are those which arise

out of the nature and essential character of the national government, the provisions of its

Constitution, or its laws and treaties made in pursuance thereof. (See the Slaughterhouse

Cases)

203.     By misapplying and enforcing a city code on Prows and subjecting him to the

penalties thereof, Prows had several of his constitutional rights violated.

35

204.     Prows was not given the basic due process rights protected by the constitution.

205.     Prows was given no hearing before an impartial tribunal, no opportunity to cross examine witnesses against him, no trial by jury, no discovery, nor any other due process provisions guaranteed to him.

206.     While there is no definitive list of the "required procedures" that due process requires, Judge Henry Friendly generated a list that remains highly influential. Relevant to this action, Prows was never granted the following: 1) An unbiased tribunal. 2) The opportunity to present reasons why the proposed action should not be taken. 3) The right to present evidence. 4) A decision based exclusively on the evidence presented. 5) Requirement that the tribunal prepare written findings of fact and reasons for its decision. 6) Requirement that the tribunal prepare a record of the evidence presented.

207.     Thus, the required elements of due process are those that "minimize substantively unfair or mistaken deprivations" by enabling persons to contest the basis upon which a state proposes to deprive them of protected interests.

208.     Hearing of some form is required before an individual is deprived of property or liberty interest. This right is a basic aspect of the duty of government to follow a fair process of decision-making when it acts to deprive a person of his possessions. The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment.

209.     Thus, the notice of hearing and the opportunity to be heard must be granted at a meaningful time and in a meaningful manner.

210.     The city code misapplied to Prows, was an administrative action meant for Persons,

Inhabitants, Members of the Corporation, i.e., creatures of statute, not the sovereign men and women of Ohio and the United States.

*211.*     Municipalities are liable for constitutional violations by demonstrating deliberate indifference on the part of the municipality to recurring constitutional violations committed by non-policymaking employees (*Pena v. Leombruni, 200 F.3d 1031, 1033, 1034 (7th Cir.1999),* or deliberate indifference to a very strong likelihood that constitutional rights will be violated as a result of failing to train, supervise or discipline in certain areas where the need for such training is obvious (*Allen v. Muskogee, 119 F.3d 837, 843, 844 (10th Cir. 1997).* Liability in such cases is based on the Supreme Court's decisions in *City of Canton v. Harris, 489 U.S. 378 (1989).*

212.     As a direct and proximate result of City Policymaker Defendants' color of law actions in which they acted outside the scope of their authority, Prows suffered and continues to suffer damages, including the loss of his property and the mental and emotional distress that this violation of his sacred, inalienable rights caused.

WHEREFORE, Prows demands judgment for the violation of his Fourteenth Amendment right, against the City Policymaker Defendants Elliott and Perry, jointly and severally for the actual, general, special, and compensatory damages in the amount of $50,000.000 per Defendant, and further demands judgment against Elliott and Perry for punitive damages in an amount to be determined by the Judge, plus cost of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

## COUNT VIII
## 42 USC § 1985(3)

213.     Prows realleges, restates, and incorporates by reference the allegations in the

37

foregoing jurisdictional and factual allegations.

214.     For the purposes of this claim under section 1985, all City of Oxford Policymakers are "Persons." The violations of the constitution that have been mentioned herein this complaint are certainly clearly established law. Any reasonable policymaker should have known that the actions undertaken, all done under color of state law, were violative of Prows' inalienable rights protected under the United States Constitution.

215.     All named Defendants conspired together, in a coordinated effort, all done under color of state law, to deprive Prows of his constitutionally secured rights. The actions by City Policymakers were far outside the scope of their authority.

216.     The color of law actions that were undertaken by Defendants deprived Prows of the equal protection of the laws, as well as depriving him of the equal privileges and immunities under the laws, along with several other constitutional deprivations.

217.     Prows had his property trespassed upon, numerous times, and eventually had his property destroyed by a lawn care company, with the approval and agreement by City of Oxford Policymakers.

218.     These color of law actions were manifestly outside the scope of the authority of all City Defendants.

219.     All Defendants violated clearly established law that any reasonable official should have known.

220.     As a direct and proximate result of Defendants' color of law actions in which they acted outside the scope of their authority, Prows suffered and continues to suffer damages, including the loss of his property and the mental and emotional distress that this violation of his sacred, inalienable rights caused.

WHEREFORE, Prows demands judgment for this conspiracy to violate his constitutional rights, against the Defendants jointly and severally for the actual, general, special, and compensatory damages in the amount of $50,000.000 per Defendant, and further demands judgment against the Defendants for punitive damages in an amount to be determined by the Judge, plus cost of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

## FEDERAL QUESTIONS

221.    Can ordinances and codes passed by the legislative authority of a municipal corporation, such as the City of Oxford, limit or violate the constitutionally secured rights of U.S. citizens living within the territorial jurisdiction of that municipality? Prows argues NO.

222.    Do Ohio citizens living in Oxford Township have more property rights than Prows? Prows argues NO.

223.    Does the City of Oxford's Property Maintenance Code allow city code enforcement officers to trespass upon and destroy Prows' property? Prows argues NO.

224.    Does the City of Oxford's Property Maintenance Code grant the City of Oxford title, interest or ownership in Prows' property? Prows argues NO.

225.    Can ordinances and codes, passed by the legislative authority of a municipal corporation, such as the City of Oxford, meant for Persons, Inhabitants, Members of the Corporation, be misapplied and enforced on the sovereign men and women who own property within the territorial jurisdiction of the city? Prows argues NO.

## LAWFUL MANDATE TO IMPANEL A FEDERAL GRAND JURY

226.    Orthogonally, Prows also seeks of this Honorable Court, compliance with 42 USC §
        1987 (Prosecution of violation of certain laws) that authorizes and requires, at the expense
        of the United States, that prosecutions be instituted against all persons allegedly violating
        any of the provisions of 18 USC §§ 241,242, as contemplated by 18 USC § 1964 (Civil
        remedies) subsections (a),(b),(c) as well as § 1968 (Civil investigative demand) and to thus
        cause such persons to be promptly arrested, and imprisoned or bailed, for trial before the
        court of the United States or the territorial court having cognizance of the offense. See Pub.
        Law 106- 274, Sec. 4 (d), Sept. 22, 2000, 114 Stat. 804.

227.    The institution of such criminal prosecution is obviously distinct from this instant
        suit, but because the facts alleged herein give cognizance of the offense(s), each federal
        judge or magistrate judge has a lawful duty to act accordingly, in line with 18 USC § 4.
        WHEREFORE, Plaintiff now asks for a judgment in his favor, as follows, against all
    Defendants who conspired together in violating the protected rights described herein:

## REQUEST FOR RELIEF

WHEREFORE, Tate Prows seeks redress for grievances in which this Court can grant relief:

228.    Assume jurisdiction over this action.

229.    That, per 28 USC § 2201, or 5 USC § 706, this Honorable Court enter judgments
        declaring or holding unlawful Defendants' behavior herein described as repugnant to the
        constitution, as specified, for the good cause shown (serious crimes to deprive
        constitutionally protected rights); and therefore, that Defendants are liable to Plaintiff under
        Title 42 USC §§ 1983 and 1985(3).

230.    Prows asks this Honorable Court, pursuant to its authority, to hold accountable

every Defendant named herein this Complaint, for their role in the deprivation of Prows' constitutionally secured rights, which fell far outside the scope of their duties as employees and Policymakers of a municipal government within the State of Ohio.

231.     Prows demands compensatory damages from Defendant City of Oxford in the amount of $1,300,000.00 dollars for the arbitrary, capricious, and unreasonable deprivation of his rights as secured by the Constitution of the United States.

232.     Prows demands punitive damages from Defendants Perry and Elliott for $1,500,000.00 each, for their role as City of Oxford Policymakers and their violations of Prows' constitutional rights.

233.     Prows demands punitive damages from Defendant Borso for $900,000.00 for her role as City Code Enforcement, and her violation of Prows' constitutional rights and her trespass.

234.     Compensation for any fees and costs of this suit.

235.     Prows asks that this Honorable Court order such other and further relief as the Court may deem proper, e.g., issuance of process via this Court's pendent jurisdiction over related state matters or via 5 USC Chap.7, to effect removals from public office, sanctions or disbarments, license revocations, or other such disciplinary actions this Court finds appropriate to good cause shown.

236.     Prows asks this Honorable Court, pursuant to Ohio Revised Code Chapter 2733, to initiate an action in Quo Warranto against the City of Oxford, for the violations of their Charter, by way of violating the Ohio Constitution, including but not limited to, Article 1 Sections 1,2,5,9,14,20, and Article 18 Section 2.

237.     Any other relief found just and reasonable by this Honorable Court.

WHEREFORE, Prows demands judgment for actual, compensatory, and punitive damages against Defendants, together with such other relief as the Court may deem reasonable and just under the circumstances.

Dated this _29th_ day of _May_ 2023.

Respectfully submitted,

Tate Prows, Plaintiff

Tate Prows
225 W. Chestnut St, Oxford, OH 45056
(513) 460-2078
TateMo22@yahoo.com




*Exhibit A*

**CODE ENFORCEMENT**

☐ **CAUTION**        ☐ **WARNING**

**City of Oxford Code Enforcement**
15 S. College Avenue
Oxford, OH  45056
**www.cityofoxford.org**

Code Enforcement
(513) 524-5209

| | |
|---|---|
| Address: | |
| Name of Resident: | |
| Contact No.: | |

You are hereby ordered to correct the following violation of the Oxford City Code indicated below:

| | | |
|---|---|---|
| | 302.1 | **Sanitation** – *All exterior property and premises shall be maintained in a clean, safe and sanitary condition. The occupant shall keep the exterior property in a clean and sanitary condition.* |
| | 302.4 | **Cutting of Weeds and Grass** – *All premises and exterior property shall be maintained free from weeds or plant growth in excess of 10 inches. All noxious weeds shall be prohibited.* |
| | 307.1 | **Accumulation of Rubbish or Garbage** – *All exterior property and premises, and interior of every structure, shall be free from any accumulation of rubbish or garbage.* |
| | 307.2 | **Disposal of Rubbish** – *Every occupant of a structure shall dispose of all rubbish in a clean and sanitary manner. All large items must have a large item pick-up sticker for removal.* |
| | 307.3.2 | **Container Requirements** – *All trash must be contained in containers with lids at all times, even when not sitting out for collection day.* |
| | 521.12 | **Outdoor Furniture Restrictions** – *Furniture not manufactured for outdoor use is prohibited outdoors.* |
| | 931.03 | **Placement and Maintenance of Containers** – *Containers may be at curb only 24 hours before and after collection day.* |
| | 935.10 | **Pruning for Public Safety** – *Such branches shall not obstruct street lamps, street intersections, 8 feet above sidewalk or sidewalk itself and 15 feet above roadway itself.* |
| | | **Other:** |

| **DESCRIPTION OF VIOLATION, COMMENTS** |
|---|
| LONG GRASS & WEEDS |
| FOUNDATION OF ORD |
| |
| |

**Re-Inspection Date:** 7 - 28 - 21

The above marked violations must be corrected by the time(s) specified in this report.
**FAILURE TO COMPLY WILL RESULT IN CRIMINAL
OR CIVIL CITATIONS BEING ISSUED.**

| Received by: | Inspector: | Date: |
|---|---|---|
| | 7-23-21 | |

*Revised 11/20*





**CODE ENFORCEMENT**

☐ **CAUTION**      ☒ **WARNING**

**City of Oxford Code Enforcement**
15 S. College Avenue          Code Enforcement
Oxford, OH 45056           (513) 524-5209
**www.cityofoxford.org**

| Address: | 225 W. CHESTNUT Rd. |
| Name of Resident: | OWNER: ANN L PROWS |
| Contact No.: | |

You are hereby ordered to correct the following violation of the Oxford City Code indicated below:

| | | |
|---|---|---|
| | 302.1 | **Sanitation** – *All exterior property and premises shall be maintained in a clean, safe and sanitary condition. The occupant shall keep the exterior property in a clean and sanitary condition.* |
| X | 302.4 | **Cutting of Weeds and Grass** – *All premises and exterior property shall be maintained free from weeds or plant growth in excess of 10 inches. All noxious weeds shall be prohibited.* |
| | 307.1 | **Accumulation of Rubbish or Garbage** – *All exterior property and premises, and interior of every structure, shall be free from any accumulation of rubbish or garbage.* |
| | 307.2 | **Disposal of Rubbish** – *Every occupant of a structure shall dispose of all rubbish in a clean and sanitary manner. All large items must have a large item pick-up sticker for removal.* |
| | 307.3.2 | **Container Requirements** – *All trash must be contained in containers with lids at all times, even when not sitting out for collection day.* |
| | 521.12 | **Outdoor Furniture Restrictions** – *Furniture not manufactured for outdoor use is prohibited outdoors.* |
| | 931.03 | **Placement and Maintenance of Containers** – *Containers may be at curb only 24 hours before and after collection day.* |
| | 935.10 | **Pruning for Public Safety** – *Such branches shall not obstruct street lamps, street intersections, 8 feet above sidewalk or sidewalk itself and 15 feet above roadway itself.* |
| | | Other: |

| DESCRIPTION OF VIOLATION, COMMENTS |
|---|
| |
| |
| |
| |

| Re-Inspection Date: | 9/20/21 |

The above marked violations must be corrected by the time(s) specified in this report.
**FAILURE TO COMPLY WILL RESULT IN CRIMINAL OR CIVIL CITATIONS BEING ISSUED.**

| Received by: | Inspector: Burso | Date: 9/13/21 |
|---|---|---|

*Revised 11/20*



*Exhibit B*

## CODE ENFORCEMENT

☐ **CAUTION**      ☒ **WARNING**

**City of Oxford Code Enforcement**
15 S. College Avenue
Oxford, OH 45056
**www.cityofoxford.org**

*POSTED AT*
*4354 KEHR*

Code Enforcement
(513) 524-5209

| Address: | 225 W CHESTNUT RD |
|---|---|
| Name of Resident: | OWNER: ANN L PRUSS |
| Contact No.: | |

You are hereby ordered to correct the following violation of the Oxford City Code
indicated below:

| | | |
|---|---|---|
| | 302.1 | **Sanitation** – *All exterior property and premises shall be maintained in a clean, safe and sanitary condition. The occupant shall keep the exterior property in a clean and sanitary condition.* |
| X | 302.4 | **Cutting of Weeds and Grass** – *All premises and exterior property shall be maintained free from weeds or plant growth in excess of 10 inches. All noxious weeds shall be prohibited.* |
| | 307.1 | **Accumulation of Rubbish or Garbage** – *All exterior property and premises, and interior of every structure, shall be free from any accumulation of rubbish or garbage.* |
| | 307.2 | **Disposal of Rubbish** – *Every occupant of a structure shall dispose of all rubbish in a clean and sanitary manner. All large items must have a large item pick-up sticker for removal.* |
| | 307.3.2 | **Container Requirements** – *All trash must be contained in containers with lids at all times, even when not sitting out for collection day.* |
| | 521.12 | **Outdoor Furniture Restrictions** – *Furniture not manufactured for outdoor use is prohibited outdoors.* |
| | 931.03 | **Placement and Maintenance of Containers** – *Containers may be at curb only 24 hours before and after collection day.* |
| | 935.10 | **Pruning for Public Safety** – *Such branches shall not obstruct street lamps, street intersections, 8 feet above sidewalk or sidewalk itself and 15 feet above roadway itself.* |
| | Other: | |

| DESCRIPTION OF VIOLATION, COMMENTS |
|---|
| |
| |
| |
| |
| **Re-Inspection Date:** 9/20/21 |

The above marked violations must be corrected by the time(s) specified in this report.
**FAILURE TO COMPLY WILL RESULT IN CRIMINAL
OR CIVIL CITATIONS BEING ISSUED.**

| Received by: | Inspector: Borso | Date: 9/13/21 |
|---|---|---|

*Revised 11/20*

3/6/23, 10:52 AM
BCSO Inform Browser : 20.203.39.1 - Reports - Incident Report

Exhibit C

# Incident Detail Report

Data Source: **Data Warehouse**
Incident Status: **Closed**
Incident number: **21-155681**
Case Numbers:
Incident Date: **9/14/2021 12:18:13**
Report Generated: **3/6/2023 10:52:14**

## Incident Information

| | | | |
|---|---|---|---|
| **Incident Type:** | LE 1 officer | **Alarm Level:** | |
| **Priority:** | Report | **Problem:** | Vandalism report |
| **Determinant:** | | **Agency:** | LAW |
| **Base Response#:** | | **Jurisdiction:** | Oxford Police Dept. |
| **Confirmation#:** | | **Division:** | 01 Road Patrol |
| **Taken By:** | Kingsley, Robert | **Battalion:** | 01 Road Patrol |
| **Response Area:** | 1 | **Response Plan:** | OPD LE1 |
| **Disposition:** | Narrative for information | **Command Ch:** | |
| **Cancel Reason:** | | **Primary TAC:** | |
| **Incident Status:** | Closed | **Secondary TAC:** | |
| **Certification:** | LE | **Delay Reason (if any):** | |
| **Longitude:** | 84746712 | **Latitude:** | 39500497 |

## Incident Location

| | | | |
|---|---|---|---|
| **Location Name:** | | **County:** | BUTLER |
| **Address:** | 225 W Chestnut St | **Location Type:** | |
| **Apartment:** | | **Cross Street:** | KEHR RD/S COLLEGE AVE |
| **Building:** | | **Map Reference:** | |
| **City, State, Zip:** | OXFORD OH 45056 | | |

## Call Receipt

| | | | |
|---|---|---|---|
| **Caller Name:** | TATE PROWS | | |
| **Method Received:** | | **Call Back Phone:** | (513) 460-2078 |
| **Caller Type:** | | **Caller Location:** | |
| **Caller Address:** | | **Caller Location Phone:** | |
| **Caller Building:** | | **Caller Apartment:** | |
| **Caller City, State, Zip:** | | **Caller County:** | |

## Time Stamps

| Description | Date | Time | User | Elapsed Times Description | Time |
|---|---|---|---|---|---|
| **Phone Pickup** | | | | | |
| **1st Key Stroke** | 9/14/2021 | 12:17:17 | | **Received to In Queue** | 00:01:08 |
| **In Waiting Queue** | 9/14/2021 | 12:19:21 | | **Call Taking** | 00:01:08 |
| **Call Taking Complete** | 9/14/2021 | 12:19:21 | Kingsley, Robert | **In Queue to 1st Assign** | 00:02:09.6 |
| **1st Unit Assigned** | 9/14/2021 | 12:21:30 | | **Call Received to 1st Assign** | 00:04:17.6 |
| **1st Unit Enroute** | 9/14/2021 | 12:21:30 | | **Assigned to 1st Enroute** | 00:00:00.1 |
| **1st Unit Arrived** | 9/14/2021 | 12:36:15 | | **Enroute to 1st Arrived** | 00:14:44.6 |
| **Closed** | 9/14/2021 | 12:47:20 | Nethers, Katie | **Incident Duration** | 00:30:07 |

## Resources Assigned

| Unit | Primary Flag | Assigned | Disposition | Enroute | Staged | Arrived | At Patient | Delay Avail | Complete | Odm. Enroute | Odm. Arrived | Cancel Reason |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1P52 | Y | 12:21:30 | Narrative for information | 12:21:30 | | 12:36:15 | | | 12:47:20 | | | |

## Personnel Assigned

| Unit | Name |
|---|---|
| 1P52 | Campbell, Scott (OX2327) |

## Caution Notes
**No Caution Notes found**

## Pre-Scheduled Information
**No Pre-Scheduled Information**

## Transports
**No Transports Information**

## Transport Legs
**No Transports Information**

## Comments

| Date | Time | User | Type | Conf. | Comments |
|---|---|---|---|---|---|
| 9/14/2021 | 12:19:09 | RCK | Response | | [1] PEOPLE TRESPASSING ON PROPERTY AND DAMAGING PROPERTY. |
| 9/14/2021 | 12:19:19 | RCK | Response | | [2] CP IN OPD LOBBY |

## Address Changes
**No Address Changes**

BCSO Inform Browser : 20.203.39.1 - Reports - Incident Report

Priority Changes
**No Priority Changes**

Alarm Level Changes
**No Alarm Level Changes**

Activity Log
**No Call Activity**

Edit Log
**No Edits**

Custom Time Stamps
**No Custom Time Stamps**

Custom Data Fields
**No Custom Data Fields**

Attachments
**No Attachment**

2/2

Exhibit D



CITY OF
**OXFORD**
HOME OF MIAMI UNIVERSITY

**COMMUNITY DEVELOPMENT DEPARTMENT**
**NOTICE TO CUT WEEDS, VINES, OR GRASS**

September 21, 2021

ANN L PROWS
4354 KEHR RD.
OXFORD, OH 45056

**RE: 225 W. CHESTNUT STREET    PARCEL ID: H4100118000097**

Dear Ms. Prows:

You are hereby notified that the above referenced property is in violation of Oxford's Property Maintenance Code Section **302.4** which prohibits grass or weed growth in excess of ten (10) inches. We have received numerous complaints regarding its condition. I have physically gone to both the property in question and your property on Kehr Rd. to make contact in order to rectify this issue, with no results.

You will have 10 days from receipt of this notice to remove the overgrowth. If you fail to do so, the City will cause the overgrowth to be cut at your expense, and the City will place a lien on the property for the amount owed in accordance with Ohio Revised Code Section 731.54. An inspection will be conducted on October 6, 2021 to check for compliance.

Thank you in advance for your cooperation.

Sincerely,

Laura M. Borso
Code Enforcement Officer
lborso@cityofoxford.org
513-524-5218

C: 513-283-7880

Exhibit E.

**From:** tatemo22 <tatemo22@yahoo.com>
**Sent:** Tuesday, September 28, 2021 12:35 PM
**To:** Laura Borso <LBorso@cityofoxford.org>
**Subject:** Weeds

Good afternoon Ms. Borso. My name is Tate Prows, and I reside at 225 W Chestnut St, and am Ann Prows' son. I would like to discuss your certified letter in regards to my yard. After reading the Ohio Revised Code that you referenced, I will go through my yard tonight, and in the coming days, to pull weeds that have grown too high. I would also like to see if you and I could schedule a time for you to come out, re inspect the premises, along with me, and show me the types of weeds that I should be watching out for.

Thanks for your time.

Tate

Sent from my Galaxy

RE: Weeds

From: tatemo22 (tatemo22@yahoo.com)

To: lborso@cityofoxford.org

Cc: sperry@cityofoxford.org

Date: Wednesday, September 29, 2021 at 09:47 AM EDT

"Plant Growth" is fairly vague language. Thank you for your offer and claim.

Tate Prows

Sent from my Galaxy

-------- Original message --------
From: Laura Borso <LBorso@cityofoxford.org>
Date: 9/29/21 8:51 AM (GMT-05:00)
To: tatemo22 <tatemo22@yahoo.com>
Cc: Sam Perry <sperry@cityofoxford.org>
Subject: RE: Weeds

Tate,

Thank you for your response, however the code referred to is the City of Oxford's Property Maintenance Code Section **302.4** which not only prohibits the overgrowth of weeds, but also grass and any other plant growth in excess of 10". I have copied that section for your review below.

PMC 302.4 Maintenance and removal of weeds. All premises and exterior property shall be maintained free from weeds, grass and/ or plant growth in excess of ten (10) inches. All noxious weeds shall be prohibited. (1) All properties within the City of Oxford must be maintained in accordance with Section 302.4 of the PMC as amended and adopted by the City of Oxford, **which prohibits weeds, grass or plant growth in excess of ten inches (10"),** excepting cultivated flowers, gardens and fields used for agricultural purposes

In this case your grass is also over 10" and will need to be cut per the letter received. Completion of the mowing of you yard is required by October 5th per the letter received. An inspection will be conducted on October 6th to check for compliance.

Thank you in advance for your cooperation.

*Laura M. Borso*

Code Enforcement Officer

O: 513-524-5218

*Exhibit F*

Ann-Louise Prows

4354 Kehr Road & 225 W Chestnut St

Oxford, Ohio 45056

# AFFIDAVIT OF STATUS

I, a woman, Ann-Louise Prows, am over the age of consent, am of sound mind, am a creation of God-Almighty and a follower of God's laws first and foremost, and the laws of man when they are not in conflict (Leviticus 18:3,4). Pursuant to Matthew 5:33-37 and James 5:12, let my yea be yea, and my nay be nay, as supported by Federal Public Law 97-280, 96 Stat. 1211- "Whereas the Bible, the Word of God, has made a unique contribution in shaping the United States as a distinctive and blessed nation and people" and "Whereas Biblical teachings inspired concepts of civil government that are contained in our Declaration of Independence and the Constitution of the United States: and "Whereas.. the Bible is the rock on which our Republic rests"". I have personal knowledge of the matters stated herein and hereby asseverate, understanding both the spiritual and legal liabilities of, "Thou shalt not bear false witness against thy neighbor."

1. I, a woman, Ann-Louise Prows, claim 4354 Kehr Road, Oxford Ohio, and 225 W Chestnut St, Oxford Ohio, are my properties.
2. I, a woman, Ann-Louise Prows, am not Property of PERSONS doing business as CITY OF OXFORD.
3. I, a woman, Ann-Louise Prows, have no obligation [contract] with PERSONS doing business as CITY OF OXFORD.
4. I, a woman, Ann-Louise Prows, have not relinquished rights to PERSONS doing business as CITY OF OXFORD.
5. I, a woman, Ann-Louise Prows, have no obligation [contract] to acknowledge, believe, adhere; laws, statutes, ordinances, codes, et. al, authored by PERSONS doing business as CITY OF OXFORD.
6. I, a woman, Ann-Louise Prows, claim that any man, woman, or PERSON doing business as CITY OF OXFORD, who Trespasses against my Property, without right, will be held liable.
7. I, a woman, Ann-Louise Prows, am noticing and providing opportunity for any man, woman, or PERSON doing business as CITY OF OXFORD, 10 days to rebut my Affidavit of Status, point for point.
8. Failure to rebut the facts stated herein shall serve as tacit agreement and acquiescence from any, man, woman, or PERSON doing business as CITY OF OXFORD, that all herein be true.

I declare and will testify viva voce, in open court, under penalty of perjury, that all herein be true. Executed on this _____ day, of the _____ month, in the Year of our Lord and Savior, two thousand twenty one.

---

**Ann-Louise Prows: woman**

Notary used without prejudice to my rights:

BE IT REMEMBERED, That on this _____ day of _____, in the year of our LORD, two thousand twenty one, personally appeared before me, the Subscriber, a Notary Public for the State of Texas, Ann-Louise Prows, party to this Document, known to me personally to be such, and she acknowledged this Document to be her act and deed. Given under my hand and seal of the office, the day and year aforesaid.

---

**Notary Public Sitting in, and for, The State of Texas**

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Douglas Elliott
15 S College Ave
Oxford, OH 45056

9590 9402 6287 0274 2516 79

2. Article Number (Transfer from service label)

7020 3160 0001 6739 1725

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____ ☐ Agent ☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery
City of Oxford     10/4/21

D. Is delivery address different from item 1? ☑ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Laura Borso
15 S College Ave
Oxford, OH 45056

9590 9402 6287 0274 2517 09

2. Article Number (Transfer from service label)

7020 3160 0001 6739 1718

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____ ☐ Agent ☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery
City Oxford     10/4/21

D. Is delivery address different from item 1? ☑ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Sam Perry
15 S College Ave
Oxford, OH 45056

9590 9402 6287 0274 2516 86

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____ ☐ Agent ☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery
City of Oxford     10/4/21

D. Is delivery address different from item 1? ☑ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Exhibit G

## Record Request

From: tatemo22 (tatemo22@yahoo.com)

To: lborso@cityofoxford.org; delliott@cityofoxford.org; sperry@cityofoxford.org

Date: Wednesday, October 13, 2021 at 02:24 PM EDT


Good afternoon. As Laura Borso is threatening to continue with her criminal behavior, apparently at the behest of her superiors, I would like to request all the records which show any legal authority on which they might rely to encroach on, enter or otherwise disturb, non commercial, private property, that does not belong to the city.

I would also like to inspect all records which would give them the idea that their municipal ordinances are somehow binding on the public, as if laws that were passed through Congress.

Thanks you,

Tate D Prows



Sent from my Galaxy

Exhibit H



**CITY OF**
# OXFORD
**HOME OF MIAMI UNIVERSITY**

November 3, 2021

Ann L. Prows
4354 Kehr Road
Oxford, Ohio 45056

RE: 225 West Chestnut, Oxford, Ohio

Please be advised that on October 18, 2021, the above referenced property was deemed to have noxious vegetation (tall grass). As a result of your failure to comply with the notice, the City pursued the provisions of the Oxford Codified Ordinance Section 935.20 and cut the noxious vegetation on October 20, 2021. The cost of such action totaled $400.00.

A Class C Civil Fine of $150.00 is also being assessed due to having removed the posting and placard before the property was brought into compliance.

You have fifteen (15) days from receipt of this notice to repay the City for labor, Civil Fine, plus the costs of investigation, handling of the compliant, service and notification. **If such cost is not paid within the fifteen (15) days, the delinquency will be filed with the City Clerk who will notify the Butler County Auditor of such charge, which will be assessed against the property, in accordance with Ohio R.C. 731.54.**

If you wish to pay the total cost of $570.70 to avoid being assessed on your real estate bill, please call 513-524-5221, Option 1 and provide the Finance Department with your invoice number 23310, or send a check payable to the City of Oxford along with the enclosed copy of your invoice to 15 South College, Oxford, Ohio 45056, Attention Community Development Department.

Sincerely,

Sam Perry, AICP
Community Development Director

**City of Oxford**

15 S College Ave

Oxford, OH 45056

Ph: (513) 524-5204

**Invoice Number**

00023310

ANN L PROWS

4354 KEHR RD

OXFORD 9297, OH  45056



Pay by Account In Full

**TOTAL AMOUNT DUE**

**$ 570.70**

| Pay by Invoice Code | Type | Record No. | Invoice No. Address | | Amount Due |
|---|---|---|---|---|---|
| | Enforcement | EN21-0146 | 00023310 225 W CHESTNUT ST | | $ 150.00 |
| | | **Fee Detail:** | 1.00 Class C Civil Fine | | |
| | **Effective Date:** | **11/03/2021** | Amount Cost: | $0.00 | |
| | Enforcement | EN21-0146 | 00023310 225 W CHESTNUT ST | | $ 400.00 |
| | | **Fee Detail:** | 400.00 Cut Fee | | |
| | **Effective Date:** | **11/03/2021** | Amount Cost: | $0.00 | |
| | Enforcement | EN21-0146 | 00023310 225 W CHESTNUT ST | | $ 20.70 |
| | | **Fee Detail:** | 20.70 Postage | | |
| | **Effective Date:** | **11/03/2021** | Amount Cost: | $0.00 | |
| Total Amount Due | | | | | $ 570.70 |

Exhibit I

## COMPLAINT

---

### In the name and authority of the State of Ohio

---

I, the undersigned "Affiant", a credible person, do solemnly affirm that I have direct personal knowledge that leads me to believe, and I do believe, that the City of Oxford, it's Code Enforcement representative Laura Borso, its City Manager Douglas Elliott, Community Development Director Sam Perry, did commit or were complicit with the following State and Federal crimes dating from July 2021 until present day. The violators listed are all Corporate Charter and Constitutionally bound, or have sworn oaths to such, or are employed by Municipal Corporation doing business as City of Oxford, in the Jurisdiction of Butler County, Ohio.

1) The City of Oxford, Borso, Perry, and Elliott have committed several *OHIO REVISED CODE* violations including Menacing by stalking s. 2903.211, Criminal trespass s. 2911.21, Criminal mischief s. 2909.07, Criminal damaging or endangering s. 2909.06, Engaging in pattern of corrupt activity s. 2923.32, beginning on or around July 23, 2021, in Butler County, Ohio.

2) The City of Oxford, Borso, Perry, and Elliott began harassing my family, trespassing, and leaving threatening communications on or around July 23, 2021, in Butler County, Ohio, claiming violations of the City's Code Enforcement. City's and its employee's actions violated multiple *OHIO REVISED CODE,* listed above.

3) After several attempts by Affiant to come to a reasonable settlement were denied by City of Oxford, Borso, Perry, and Elliott, violators abused and misused ORC s. 731.51 and yet again trespassed on Affiants non commercial private property and destroyed said property in Butler County, Ohio.

4) Fraudulent mailings were then sent to Affiant and Affiant's family, demanding extortion payments under the threat of property confiscation. Fines in excess of $20 were levied without due process, squarely violating City of Oxford's Corporate Charter as well as rights of which we the people have guaranteed protection by the Bill of Rights in our <u>Ohio Constitution</u>, U.S. <u>Constitution</u>, as well as a number of other state and federal laws. Violators' actions constitute rights violations not only against Affiant but also against the peace and dignity of the State.



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Sherrif Richard Jones
705 Hanover St
Hamilton, OH 45011

9590 9402 6834 1074 5833 82

2. Article Number (Transfer from service label)

7020 3160 0001 6733 5309

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

B. Received by (Printed Name)    C. Date

D. Is delivery address different from item 1?
   If YES, enter delivery address below:

3. Service Type
   - Adult Signature
   - Adult Signature Restricted Delivery
   - Certified Mail®
   - Certified Mail Restricted Delivery
   - Collect on Delivery
   - Collect on Delivery Restricted Delivery
   - Insured Mail

   - Priority Mail
   - Registered
   - Registered
     Delivery
   - Signature C
   - Signature C
     Restricted

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Vipal Patel
US Att office
221 E Fourth St, suite 400
Cincinnati, OH 45202

9590 9402 6834 1074 5834 12

2. Article Number (Transfer from service label)

7020 3160 0001 6733 5194

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

B. Received by (Printed Name)    C. Date
   IRIS STOOFF

D. Is delivery address different from item 1?
   If YES, enter delivery address below:

3. Service Type
   - Adult Signature
   - Adult Signature Restricted Delivery
   - Certified Mail®
   - Certified Mail Restricted Delivery
   - Collect on Delivery
   - Collect on Delivery Restricted Delivery
   - Insured Mail

   - Priority Ma
   - Registered
   - Registered
   - Signature
   - Signature
     Restricted

Domestic Re

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Vipal J. Patel
US Att office
221 E Fourth St, suite 400
Cincinnati, OH 45202

9590 9402 6834 1074 5834 43

20 3160 0001 6733 5163

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

B. Received by (Printed Name)    C. Date
   IRIS STOOFF

D. Is delivery address different from item 1?
   If YES, enter delivery address below:

3. Service Type
   - Adult Signature
   - Adult Signature Restricted Delivery
   - Certified Mail®
   - Certified Mail Restricted Delivery
   - Collect on Delivery
   - Collect on Delivery Restricted Delivery
   - Insured Mail
   - Insured Mail Restricted Delivery
     (over $500)

   - Priority M
   - Registere
   - Registere
     Delivery
   - Signature
   - Signature
     Restricte

Domestic Re

---

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
   - Agent
   - Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?    - Yes
   If YES, enter delivery address below    - No

DEC - 3 2021

3. Service Type
   - Adult Signature
   - Adult Signature Restricted Delivery
   - Certified Mail®
   - Certified Mail Restricted Delivery
   - Collect on Delivery
   - Collect on Delivery Restricted Delivery

   - Priority Mail Express®
   - Registered Mail™
   - Registered Mail Restricted Delivery
   - Signature Confirmation™
   - Signature Confirmation Restricted Delivery

**SENDER: COMPLETE THIS SECTION**

Complete items 1, 2, and 3.
Print your name and address on the reverse so that we can return the card to you.
Attach this card to the back of the mailpiece, or on the front if space permits.

Article Addressed to:

Att Gen Dave Yost
30 E Broad St, 14th floor
Columbus, OH 43215

9590 9402 6834 1074 5834 29

7020 3160 0001 6733 5134

---

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
   - Agent
   - Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?    - Yes
   If YES, enter delivery address below    - No

DEC - 3 2021

3. Service Type
   - Adult Signature
   - Adult Signature Restricted Delivery
   - Certified Mail®
   - Certified Mail Restricted Delivery
   - Collect on Delivery Restricted Delivery

   - Priority Mail Express®
   - Registered Mail™
   - Registered Mail Restricted Delivery
   - Signature Confirmation
   - Signature Confirmation Restricted Delivery

**SENDER: COMPLETE THIS SECTION**

Complete items 1, 2, and 3.
Print your name and address on the reverse so that we can return the card to you.
Attach this card to the back of the mailpiece, or on the front if space permits.

Article Addressed to:

Att Gen Dave Yost
30 E Broad St, 14th floor
Columbus, OH 43215

9590 9402 6834 1074 5834 67

7020 3160 0001 6733 5200

PS Form 3811, July 2020 PSN 7530-02-000-9053

RE: FW: records request     Exhibit J

From: Christopher R. Conard (conard@coollaw.com)

To:    tatemo22@yahoo.com

Cc:    hbarbour@cityofoxford.org; delliott@cityofoxford.org; sperry@cityofoxford.org

Date:  Tuesday, March 15, 2022 at 02:57 PM EDT

Mr. Prows,

As you phrased the question, there is no specific training.  There are training sessions for new and board council members that include requirements of the Open Meetings Act and Sunshine Law generally.   PMC 302.4 as incorporated by reference in the Codified Ordinances for the City of Oxford was not voted on by City voters.

Best Regards,

Chris Conard

**Christopher R. Conard**
Attorney at Law
Coolidge Wall Co., L.P.A.
33 West First Street, Suite 200
Dayton, Ohio 45402-1289
conard@coollaw.com

Tel:  937.223.8177
Fax:  937.223.6705
DID: 937.449.5537



**From:** tatemo22 <tatemo22@yahoo.com>
**Sent:** Tuesday, March 15, 2022 11:32 AM
**To:** Christopher R. Conard <Conard@coollaw.com>
**Cc:** 'Heather Barbour' <hbarbour@cityofoxford.org>; Douglas Elliott <delliott@cityofoxford.org>; Sam Perry <sperry@cityofoxford.org>
**Subject:** RE: FW: records request

Thank you for the response, however it did not answer the questions for the records request. I did not ask what Ohio law dictates. I will simplify the question.

Has the City of Oxford conducted or held Constitutional Training, either U.S. Constitution, or Ohio Constitution, for the city council, city manager, city police department, city clerk, or code enforcement employees, within the last 20 years?

I will rephrase question #3.

Was PMC 302.4 voted on by the electors of Oxford, Ohio?

I presume the answer to both questions is No, but I would like that stated for my own record.

Sincerely,

Tate D. Prows

Sent from my Galaxy

-------- Original message --------
From: "Christopher R. Conard" <Conard@coollaw.com>
Date: 3/15/22 10:23 AM (GMT-05:00)
To: 'Tate Prows' <tatemo22@yahoo.com>
Cc: 'Heather Barbour' <hbarbour@cityofoxford.org>, Douglas Elliott <delliott@cityofoxford.org>, Sam Perry <sperry@cityofoxford.org>
Subject: FW: records request

Dear Mr. Prows,

Please see the responses to your requested information below in RED.

Chris

**Christopher R. Conard**
Attorney at Law
Coolidge Wall Co., L.P.A.
33 West First Street, Suite 200
Dayton, Ohio 45402-1289
conard@coollaw.com

Tel: 937.223.8177
Fax: 937.223.6705
DID: 937.449.5537

**From:** Tate Prows <tatemo22@yahoo.com>
**Sent:** Tuesday, March 8, 2022 10:35 AM
**To:** Heather Barbour <hbarbour@cityofoxford.org>
**Cc:** Douglas Elliott <delliott@cityofoxford.org>; Sam Perry <sperry@cityofoxford.org>
**Subject:** records request

Dear Heather,

1) I would like to know if/when the City of Oxford employees, city council members, city manager, city clerk, code enforcement employees, city police department, have undergone or had constitutional training, either Ohio Constitution, or U.S. Constitution?   Ohio law does not require constitutional training.

2) When was the last time that the city employees have had training on either State or U.S. Constitution?  See the answer to number #1 above.

3) When was PMC 302.4 voted on by the electors of the Oxford, Ohio?   The Oxford Codified Ordinances are presented to City Council for vote as ordinances subject to two public readings with the opportunity for public comment as required by the City Charter.

Sincerely,

Tate D. Prows

This electronic message and its attachments contain confidential information which may be subject to the attorney-client privilege and may constitute inside information. If the reader of this message is not the intended recipient, you are hereby notified that your use or distribution of such information, by copying or otherwise, is strictly prohibited. If you have received this message in error, please notify us immediately by reply electronic mail and then remove all traces of the electronic mail message from your system. To the extent this email communication contains any advice construed as written tax advice under Circular 230, the recipient may not use or rely on such written advice to avoid penalties asserted by the Internal Revenue Service. If you have any questions concerning this notice, the requirements of Circular 230, or how you may obtain written advice for protection against penalties, please contact the author.

This electronic message and its attachments contain confidential information which may be subject to the attorney-client privilege and may constitute inside information. If the reader of this message is not the intended recipient, you are hereby notified that your use or distribution of such information, by copying or otherwise, is strictly prohibited. If you have received this message in error, please notify us immediately by reply electronic mail and then remove all traces of the electronic mail message from your system. To the extent this email communication contains any advice construed as written tax advice under Circular 230, the recipient may not use or rely on such written advice to avoid penalties asserted by the Internal Revenue Service. If you have any questions concerning this notice, the requirements of Circular 230, or how you may obtain written advice for protection against penalties, please contact the author.

## 935.19 NOXIOUS VEGETATION TO BE REMOVED OR DESTROYED.

The City Manager or designee is authorized to determine upon what lots or parcels of land within the corporate limits of the City there is growing noxious vegetation. After a determination has been made that such noxious vegetation constitutes a public nuisance or endangers the public health, it shall be the duty of the City Manager or designee to see that the noxious vegetation is removed or destroyed, or the public nuisance abated.

(Ord. 2638. Passed 6-1-99.)

### 935.20 NOTICE TO CUT, DESTROY OR REMOVE.

(a) All properties within the City of Oxford must be maintained in accordance with Section 935.19 of the Codified Ordinances of the City of Oxford, which prohibits grass or weed growth in excess of ten (10) inches.

(b) Should the owner, occupant, or person having charge or management of any residential, commercial, or industrial lot or land within the corporate limits of the City fail to comply with Section 935.19, the City will cause the weeds or grass to be cut at the owner's expense. The City will place a lien on the property for the amount owed in accordance with Ohio R.C. 731.54.

(c) The owner, occupant, or person having charge or management of any residential, commercial, or industrial lot or land within the corporate limits of the City, within ten (10) calendar days of receiving written notice as set forth in subsection (d) hereof shall cut or destroy any noxious vegetation upon any such lot or parcel of land and prevent noxious vegetation from exceeding a height of ten (10) inches. Lots or parcels of land include areas within rights of way and between curbs and sidewalks.

(d) If an occupied property is in violation of this section, it shall be sufficient to post such notice on the property ten (10) calendar days before proceeding with the City causing the weeds or grass to be cut at the owner's expense. If an unoccupied property is in violation of this section and the property owner's address is known, notice will be issued by certified mail, return receipt requested, to the owner's address. If an unoccupied property is in violation of this Section and the owner's address is unknown, notice will be published in a newspaper of general circulation in Butler County.

(e) Those occupied properties found to be in violation of Section 935.19 shall have a posting placed on or near the front door of the structure and a placard conspicuously placed in the front yard of the property for a period of ten (10) calendar days. Said posting and placard shall be of a size, shape and color to be clearly visible and shall contain the following information:

(1) The nature of the code violation;

(2) An order to cut or remove the weeds or grass within ten (10) calendar days;

(3) Statement indicating that should the property owner fail to comply with the order, the City will cause the weeds or grass to be cut or removed at the owners' expense, and the City will place a lien on the property for the amount owed in accordance with Ohio R.C 731.54;

(4) The penalties provided for removing the posting and placard before bringing the property into compliance; and

(5) Contact information of the appropriate city department.

(f) Such posting and placard shall remain on the property until the property is brought into compliance with Section 935.19 of the Codified Ordinances of the City of Oxford. Removal of the posting and placard before the property complies with Section 935.19 shall constitute a violation of this section.

(Ord. 3142. Passed 2-15-11.)

### 935.21 EFFECT OF FAILURE TO CUT, DESTROY OR REMOVE.

Upon failure of any owner, occupant or person having charge or management of any lot or parcel of land referred to above to comply with the notice within the period of time pursuant to the request of the City of Oxford, the City Manager or designee shall cause such noxious vegetation to be cut or destroyed by the direct employment of labor or authorize some person to cut or destroy the noxious vegetation on behalf of the City.
(Ord. 2638. Passed 6-1-99.)

### 935.22 COSTS TO ENSURE COMPLIANCE.

(a) Should the City be required to pay labor and other costs to bring about compliance under this section, the City Manager or designee shall report by certified mail, return receipt requested, the costs thereof to the owner or person having charge or management of each lot or parcel of land, who shall have fifteen (15) days in which

to pay the City for labor, plus the costs of investigation, handling of the complaint, service and notification (costs shall be based on the following: labor, equipment and materials for removal and cutting; mailing fees; administrative duties of the City Manager or designee and staff, with costs being adjusted to current wages or as contracted for).

(b) If such costs are not paid within the statutory fifteen (15) days of the date notice is sent, the City Manager or designee shall report to the City Clerk of Council such delinquencies and the City Clerk shall make a return in writing to the City Auditor of such charges which shall be entered upon the tax duplicate of the County, in accordance with Ohio R.C. 731.54.

(Ord. 2638. Passed 6-1-99.)

## 935.99 PENALTY.

Whoever violates any provision of this section is guilty of a minor misdemeanor for the first offense and a misdemeanor of the fourth degree for any subsequent offense. A separate offense shall be deemed committed upon each day during or on which the violation occurs or continues.

(Ord. 2638. Passed 6-1-99.)